PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE CHAMBERS, Relator, *v.* DANIEL W. SHULTS, as County Treasurer of Steuben County, and WILLIAM W. FARLEY, as State Commissioner of Excise of the State of New York, Respondents.

(County Court, Steuben County, November, 1914.)

Liquor Tax Law — section 17, as amended — application for liquor tax certificate — prohibition of traffic in liquor when not restricted — certiorari to review action of county treasurer in refusing to issue liquor tax certificate — when refusal sustained.

Under section 17 of the Liquor Tax Law as amended in 1910 the county treasurer in deciding whether or not "traffic in liquor is prohibited at such premises by virtue of the pro-

visions of subdivision 9 of section 8 " is not restricted to the statement made in an application for a liquor tax certificate.

A statement in an application for a liquor tax certificate that the premises are situated in the city of Corning and that they have been continuously occupied for trafficking in liquors since 1898 brings the premises squarely within the exemption to the prohibition contained in said section 17.

On certiorari to review the action of the county treasurer in refusing to issue a subdivision 1 liquor tax certificate for the excise year 1913–1914 to relator whose hotel in the city of Corning is so situated that the boundary line between the city and the town of Corning runs through the hotel building, it appeared that at such time as the town had authorized the traffic in liquors relator had applied for and received a liquor tax certificate to traffic in liquors at said hotel in the *town of Corning* and at such times as the town had been " dry " he had received a certificate for traffic in liquors at the same hotel in the *city of Corning*. The bar of the hotel stood on the town side or the city side of the hotel as relator was authorized to traffic in liquor in the town or the city. For two years prior to October 1, 1913, relator had a subdivision 1 liquor tax certificate to traffic in liquors at said hotel in the town of Corning and had no certificate to traffic in liquors in the city of Corning during the excise year 1913–1914. The town in November, 1913, having voted in the negative on all excise questions, his application for a liquor tax certificate to traffic in liquors in the city of Corning made in September, 1913, was denied by the county treasurer. Held, that as relator had had no certificate which authorized him to traffic in liquors in the city of Corning for more than a year prior to June 15, 1910, the refusal of the county treasurer to issue a liquor tax certificate for said hotel in the city of Corning for the excise year 1914–1915 will be sustained.

CERTIORARI to review action of county treasurer of Steuben county in refusing to issue a subdivision 1 liquor tax certificate to relator.

Frank J. Saxton, for relator.

A. M. Sperry, for respondents.

County Court, Steuben County, November, 1914.    [Vol. 87.

CHENEY, J.    This is a certiorari proceeding to review the action of the county treasurer of the county of Steuben in refusing to issue a subdivision 1 liquor tax certificate to the relator, George Chambers, at premises described as 340 West Pulteney street in the city of Corning, for the excise year 1914–1915.

The county treasurer refused the certificate upon the ground that the granting of it would violate the provisions of subdivision 9 of section 8 of the Liquor Tax Law, commonly referred to as the " ratio law."

Application was made by relator in September, 1914, for a subdivision 1 liquor tax certificate for premises at 340 West Pulteney street in the city of Corning. At the same time a bond, to which no objection is made in this proceeding, was executed and delivered to the county treasurer, and the relator paid, or offered to pay, to the county treasurer the amount of the tax assessed upon such traffic in the city of Corning. The application also contained a statement that said premises had been continuously occupied for such traffic in liquors since 1898.

From the return filed by the county treasurer and the state commissioner of excise it appears:

That at the time of the commencement of this proceeding, and for a year prior thereto, the number of premises within the city of Corning where traffic in liquor was authorized under liquor tax certificates issued under the provisions of subdivision 1 of section 8 of the Liquor Tax Law largely exceeded the ratio established by subdivision 9 of section 8 thereof.

That a subdivision 1 certificate had been issued by the county treasurer to relator for the excise year 1913–1914 for the same premises described in the petition herein upon an application statement filed by him in which said premises were described as situate in the

town of Corning, and that said premises are so situated in the town of Corning.

That at the election held on November 4, 1913, the local option questions were duly submitted to the electors of the town of Corning and were all carried in the negative.

That there are fifty subdivision 1 liquor tax certificates issued and in force in the city of Corning, and that the population of the city of Corning, according to the United States census of 1910, is 13,730.

From the petition and return it reasonably appears, and the fact is, as admitted in the argument and briefs of counsel, that the premises of relator, described as 340 West Pulteney street in the city of Corning, are so situated that the boundary line between the city and town of Corning runs through the hotel building of relator situate thereon; that at such times as the town of Corning has, by the vote of its electors, authorized the traffic in liquors in the town of Corning, relator has applied for and received a subdivision 1 liquor tax certificate to traffic in liquors at the hotel in question in the *town of Corning*, and has paid therefor the sum of $150 per year; at such times as the town of Corning has been "dry" relator has applied for and received a subdivision 1 liquor tax certificate to traffic in liquors at the hotel in question in the *city of Corning*, and has paid therefor the sum of $525 per year.

The bar in said hotel has been moved from one part of the building to another, so that it has stood on the town side of the boundary line when relator has been authorized to traffic in liquors in the town of Corning and on the city side of the boundary line when relator was authorized to traffic in liquors in the city of Corning.

For two years prior to October 1, 1914, relator had a subdivision 1 liquor tax certificate to traffic in liquors

at the premises in question in the town of Corning. The town in November, 1913, having voted in the negative on all excise questions, relator in September of this year applied for a liquor tax certificate to traffic in liquors in the city of Corning, and that application was denied by the county treasurer.

Relator had no certificate to traffic in liquors in the *city* of Corning during the excise year 1913-1914. Counsel for relator states in his brief that in September, 1910, the same conditions prevailed affecting relator's hotel as existed in September, 1914. That in September, 1910, the town of Corning was about to become " dry " for two years beginning with October 1, 1910; that the so-called " ratio law " had gone into effect in June, 1910; that the facts regarding relator's hotel were then submitted to the excise department; that the department then passed thereon and a liquor tax certificate was then granted to relator authorizing him to traffic in liquors for the excise year 1910-1911 in the city of Corning.

Counsel for relator cites from a letter of the excise department on this subject, written at that time, the following: " We beg leave to state that there is nothing in the Liquor Tax Law to prevent the holder of a certificate from moving his bar from one room to another in the same premises. If the bar in question is moved to a room wholly within the boundary lines of the city of Corning, with the intention of carrying on the traffic in liquors in that room only, we are of the opinion that a liquor tax certificate might properly be procured for that portion of the premises."

There is nothing in the language quoted to indicate that the department took into consideration the so-called " ratio law " which had gone into effect only a few months before. It is to be presumed, however,

that in passing upon the question the department did so with reference to the law as it then existed.

Section 17 of the Liquor Tax Law provides, so far as it affects this application, that when the provisions of sections 15 and 16 have been complied with and the application is found to be correct in form, and does not show *on the face thereof* that the applicant is prohibited from trafficking in liquors under the subdivision of section 8 under which he applies nor at the place where the traffic is to be carried on, and the bond is found to be correct as to its form, and the sureties thereon are approved, that upon payment of the taxes levied under section 8 the county treasurer shall at once prepare and issue to the person making such application and filing such bond and paying such tax a liquor tax certificate, unless the traffic is prohibited in such premises by virtue of the provisions of subdivision 9 of said section 8, in which case the application shall be refused.

The courts have repeatedly held that the duties of the county treasurer in issuing liquor tax certificates are ministerial only; that no *discretion* is vested in him; that he has no power to investigate; that it is his duty to issue the certificate, upon the payment of the tax, where proper application has been made. It has even been held that he is prohibited from examining former applications to find out whether or not they are in accord with the application newly presented to him.

The broad application of those decisions seems to be limited by the provisions of section 17 of the Liquor Tax Law, as amended in 1910, which provide, that if the traffic is prohibited at such premises by virtue of the provisions of subdivision 9 of section 8 the application shall be refused.

My attention has been called to no case decided since

23

that amendment in which it is held that the county treasurer is restricted to the statements made in the application in deciding whether or not "traffic in liquor is prohibited at such premises by virtue of the provisions of subdivision 9 of section 8" and there is nothing in the language of the section itself which so restricts him.

. The application for the liquor tax certificate in question states that the premises are situate in the city of Corning and that they have been continuously occupied for trafficking in liquors since 1898. That statement brings the premises squarely within the exemption to the prohibition contained in section 17. If the county treasurer, in deciding whether traffic in liquors at the premises in question is prohibited by subdivision 9 of section 8, is allowed to rely upon no information in his possession except the application statement, and has no discretion except to base his action upon the statements contained in the application, he should have issued the liquor tax certificate asked for to relator.

Upon the facts as they appear before me, I do not believe that relator is entitled to a certificate authorizing him to traffic in liquors in the city of Corning. The excise department in 1910 held that the liquor tax certificate could then be issued if the bar in question was removed to a room wholly within the city of Corning with the intention of carrying on the traffic in liquors *in that room only.* It is evident that the department did not intend that the traffic in liquor under the certificate then issued should extend into any part of the town of Corning, although under the same roof as the *room* in which the traffic was authorized in the city of Corning.

The only exception under which relator claims the right to a certificate, under the provisions of section 17, is that contained in subdivision 9 of section 8, as fol-

lows: " But this prohibition shall not apply to any premises in which such traffic in liquor was lawfully carried on at some time within one year immediately preceding the passing of this act provided such traffic was not abandoned thereat during the said period."

For more than one year prior to the passage of said act relator had trafficked in liquor at his hotel situate partly in the town and partly in the city of Corning. During such period the traffic had been authorized by a liquor tax certificate issued to relator to traffic in liquors in the town of Corning.

The decision of this application depends largely upon the construction given to the word " premises " as used in the prohibitory clause contained in section 17 which provides that a certificate must be issued unless traffic is prohibited at such *premises* by virtue of the provisions of subdivision 9 of section 8.

I cannot believe that the word " premises " as there used should be so construed as to permit relator to traffic in liquors in any part of the city of Corning under a certificate authorizing him to traffic in liquors in the town of Corning; or to permit him to traffic in liquors in any part of the town of Corning under a certificate authorizing him to traffic in liquors in the city of Corning. It is true the word " premises " has been construed to include the building and the land and that the trafficking in liquors at a place for which a liquor tax certificate has been obtained " comprehends more than the service of liquor over the bar, and may include the distribution of liquor by waiters elsewhere about the place where the bar is located." *Matter of Lyman*, 160 N. Y. 96. In the cases where it has been so construed the " premises " did not extend into a town in which the traffic in liquor was prohibited by a vote of the electors of such town.

Before the county treasurer is ordered to issue the

certificate asked for, it should appear that traffic in liquors was legally carried on in the " premises " in question at some time within one year prior to June 15, 1910. He was asked to issue such certificate authorizing such traffic in the city of Corning. As I construe the word " premises " used in the statute, no such traffic was authorized at the premises for which a certificate is now asked, at any time within one year prior to the enactment of the " ratio law," even though relator was within that period trafficking in liquors in another part of his hotel within the town of Corning, under a certificate which authorized such traffic in such hotel in the town of Corning.

The issuing of a liquor tax certificate to the relator would be an evasion, if not a direct violation of the Liquor Tax Law. If possible a construction should be given to the term " premises " that will not bring about such a result. I am of the opinion that the liquor tax certificate issued to relator in 1910 was improperly issued.

When, in 1912, relator applied for and received a liquor tax certificate to traffic in liquor in the town of Corning, but did not apply for or receive a liquor tax certificate to traffic in liquors in the city of Corning, he ceased to traffic in liquors in the city of Corning, and had no right under the certificate issued to him to traffic in liquors in the town of Corning or to extend that traffic to any part of his hotel building situate within the corporate limits of the city of Corning. For two years he has had no certificate authorizing him to traffic in liquors in the city of Corning. He had no certificate which authorized him to traffic in liquors in the city of Corning for more than a year prior to June 15, 1910, and under the provisions of subdivision 9 of section 8 he is not now entitled to a certificate to traffic in liquors in the city of Corning.

The writ of certiorari is dismissed, the action of the county treasurer in refusing license is sustained, but, in view of the circumstances, without costs.

Writ dismissed.